Duane H. Gillman (1194)
dgillman@@djplaw.com
Penrod W. Keith (4860)
pkeith@djplaw.com
DURHAM JONES & PINEGAR
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, Utah 84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Proposed Attorneys for the Chapter 7 Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>KIDDIE KANDIDS, LLC,<br><br>Debtor. | Bankruptcy Case No. 10-20334<br>Chapter 7<br><br>Honorable R. Kimball Mosier<br><br>**[FILED ELECTRONICALLY]** |

## TRUSTEE'S MOTION FOR ORDER (A) APPROVING AUCTION AND AUCTION PROCEDURES, (B) APPROVING SALE OF PROPERTY OF THE ESTATE, AND (C) REQUESTING A REPORT FROM THE CONSUMER PRIVACY OMBUDSMAN APPOINTED IN THIS CASE AND OTHERWISE MAKING A DETERMINATION RESPECTING PRIVACY MATTERS AND (D) MOTION TO ASSUME OR REJECT CERTAIN LEASES AND OR EXTEND TIME TO ASSUME AND TO ABANDON PROPERTY

Duane H. Gillman, the Chapter 7 trustee in this case (the "Trustee"), by and through his

counsel of record, Durham Jones & Pinegar, hereby submits his motion (the "Motion") for an

Order (A) approving and auction and auction procedures for the sale described below;

(B) approving the Trustee's sale of the property of the estate of the above-named debtor (the

"Debtor") as set forth below; and (C) determining that the proposed sale is consistent with the

Debtor's confidentiality policy by, among other things, ordering and obtaining a report from the

appointed consumer privacy ombudsman with respect to the auction set forth herein and

(D) allowing the assumption or rejection of leases and contracts listed below in connection with

the auction process and the extension of time to assume or reject such leases as set forth below and the potential abandonment of property associated therewith. The property that the Trustee proposes to sell is described below.

The Trustee makes this Motion on behalf of the Debtor's estate pursuant to Bankruptcy Code Sections 332, 363 (b), (f), and (m), 365, and Federal Rules of Bankruptcy Procedure 2002 6004 and 6006.

The proposed sales of the Property shall be free and clear of interests (including liens, taxes, claims, charges or encumbrances) with valid liens and/or interests with such liens and interests attaching to the sale proceeds (with the same validity and priority, if any, they had on the petition date in this case, January 12, 2010 (the "Petition Date")), pursuant to Section 363(f), in accordance with the procedures set forth below. This Motion is supplemented by the Notice of Trustee's Intent to Sell at Auction Certain Property of the Estate and Notice of Hearing (the "Sale Notice").

## GENERAL BACKGROUND

1.     Case Filing and Plan Confirmation. The Debtor filed this case as a voluntary Chapter 7 case on January 12, 2010, the Petition Date.

2.     Trustee. The Trustee was appointed on an interim basis on January 14, 2010.

3.     Trustee's Actions. Since his appointment, the Trustee has taken the following actions:

(a)     The Trustee has consulted with parties in interest, including representatives of the Debtor, regarding the Debtor's former business and the Property and the background of the Debtor's business.

(b)     The Trustee has taken actions to secure and preserve the Debtor's business

assets.  Erkelens & Olson has aided in securing various locations.  The Trustee has

allowed various landlords to change locks on leased locations to secure property residing

therein.  The Trustee has taken steps with his accountant, Price Waterhouse, to make sure

that proprietary and confidential information stored electronically is secure and has taken

steps to insure that such information stored by third parties continues to be secure and

available for the benefit of the estate.  Customer lists have also been secured both in

terms of preservation and in terms of ensuring that they cannot be obtained by outside

parties.  The Trustee has contacted certain parties that store information for the Debtor to

assure that the information continues to be available.  The Trustee has obtained an ex

parte order and met with the United States Trustee regarding the apparent requirement

that a consumer privacy ombudsman be appointed in this case.

(c)     The Trustee has communicated with parties who have expressed an

interest in purchasing the property to be auctioned.  The Trustee has taken steps to

understand the Debtor's efforts in marketing its business prior the bankruptcy and has

continued those efforts post petition with parties who had previously expressed interest as

well as parties expressing interest after the filing of the petition.

**MOTION FOR A DETERMINATION THAT THE PROPOSED SALE OF THE
PROPERTY IS CONSISTENT WITH THE DEBTOR'S PUBLISHED
CONFIDENTIALITY POLICY BY, AMONG CONSIDERATIONS, ORDERING THE
CONSUMER PRIVACY OMBUDSMAN PRODUCE A REPORT**

4.     Background of Debtor's Business.  The Debtor has operated a professional

portrait photography business specializing in photography of children.  Prior to its bankruptcy

petition, the Debtor operated 184 children's portrait studios in the U.S. with 134 locations hosted

within Babies "R" Us stores and 50 stand-alone locations in regional malls. The Debtor utilized

its photographic equipment, a fully digital platform, and three online services to provide its

customers with portraits of children and others allowing sharing with family, friends, and

colleagues.  Pursuant to its business, the Debtor obtained a database of customers and

information related thereto ("Customer Lists").  The Debtor has maintained the Customer Lists

and the Debtor has indicated to the Trustee that the Debtor has carefully secured the Customer

Lists.  As stated above, the Trustee has also taken steps to secure such lists and information.

5.    Debtor's Promise of Confidentiality of Personal Information.  The Debtor's

website and other marketing materials disclose the Debtor's policy of maintaining personal

information on potential clients and customers as set forth in **Exhibit A** hereto.  Although

reserving the right to use the Customer Lists for promotional reasons within the Debtor, the

Debtor, through its marketing materials, also has represented that it would not otherwise rent,

sell, share or otherwise distribute customer information to any third person for marketing

reasons.

> When you order from MyStudio.KiddieKandids.Com, we need your name, email
> address, shipping address and credit card number/expiration date. We use this
> data to process your order, ship it and send you order and shipping confirmations
> via email. Except as provided in this privacy policy, we will not sell, rent, or give
> out this data to any other organization without your consent. (However, we will
> cooperate fully should a situation arise where we are required by law or requested
> by a law enforcement agency to provide information about a customer.)

6.    Personally Identifiable Information.  Section 363(b)(1) of the Bankruptcy Code

provides as follows:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in
> the ordinary course of business, property of the estate, except that if the debtor in
> connection with offering a product or a service discloses to an individual a policy
> prohibiting the transfer of personally identifiable information about individuals to

persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless –

(A)   such sale or such lease is consistent with such policy; or

(B)   after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease –

(i)   giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

(ii)   finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

11 U.S.C. § 363(b)(1). It appears that the Debtor's disclosed policy of not transferring personally identifiable information implicates this provision of the Bankruptcy Code with respect to the Debtor's Customer Lists.

7.   Consumer Privacy Ombudsman. Section 332 of the Bankruptcy Code provides that, if section 363(b)(1)(B) requires appointment of a consumer privacy ombudsman, the Court is to order the United States Trustee to appoint a disinterested person to act as consumer privacy ombudsman in the case. The Trustee has made a motion under this section for the appointment of an ombudsman which has been granted by the Court. As of the filing of this Motion, the Trustee is not aware if the United States Trustee has made the appointment. The Trustee requests that as part of this process, the court order that the ombudsman, when appointed, produce a report at least five days prior to the final hearing on this Motion (five days prior is March 25, 2010) which sets forth the views of the ombudsman with respect to the proposed sale.

8.   Privacy Concerns in Connection with the Auction. The Trustee intends to auction the property subject to the purchaser continuing to honor the Debtor's existing privacy policy

described above.  Furthermore, the Trustee intends to request that any potential purchaser at the

auction of Debtor's intellectual property commit to deliver photos that are currently undelivered

to consumers.  The Trustee believes that these steps will largely satisfy the dictates of the

bankruptcy code with respect to consumer privacy issues.

## MOTION FOR APPROVAL OF SALE AND AUCTION OF THE PROPERTY AND REAL PROPERTY

### BACKGROUND AND SALE PROCEDURES

9.  Summary of Proposed Sale and Procedures.  The Trustee has mailed or will mail

copies of this Motion and of the notice of the Motion ("Sale Notice") to the Debtor, the United

States Trustee, and all creditors and other parties in interest in this case pursuant to Fed. R. Bank.

P. 2002 and 6004.  The Trustee will also mail or has mailed the notice of the Sale Notice to all

potential purchasers of the Debtor's property at the auction requested in this motion.  The

Trustee seeks to proceed as follows subject to Court approval:  (a) at the initial hearing on this

Motion set for March 9, 2010 (as set forth in the Sale Notice filed herewith), the Trustee will

request that the Court approve procedures set forth herein and in the Sale Notice, with such

revisions as the Court may direct, including the subsequent approval of the auction, to be held at

a final hearing following the initial hearing and the auction; (b) the auction will be conducted by

the Trustee in accordance with the Court's Order (the Trustee proposes to conduct the auction at

his offices); and (c) after conclusion of the auction, at a final hearing held on March 30, 2010,

the Trustee will request that the Court approve and confirm the sale, with objections, if any, to be

heard by the Court at a time to be scheduled in the Sale Notice.

10.    <u>Property to be Auctioned</u>.  Subject to Court approval, the Trustee requests that the following property be auctioned (items a through q hereinafter referred to as the "Property," item r is referred to as the "Real Property"):

(a)    All information technology related equipment, software, hardware, printers, and related items at corporate and lab locations including a ninety day lease of the Real Property at $5,000 per month to extract such property;

(b)    The right to either to affect (i) the assumption and assignment of the license agreement between Toys "R" Us - Delaware, Inc. a Delaware corporation, d/b/a Babies "R" Us (hereinafter "BRU") and Debtor (the "BRU License"), including as potentially modified in form and substance satisfactory to any potential purchaser and BRU pursuant to 11 U.S.C. §365; or to affect (ii) the rejection of the BRU License by the estate pursuant to 11 U.S.C. § 365 and entry into a new license agreement between, and acceptable to, any potential purchaser and BRU.   In connection with the assumption of the BRU License, purchaser is responsible for any necessary cure payments as required by Section 365 of the Bankruptcy Code.

(c)    The right to the assumption and assignment of the various commercial leases set forth on schedule A attached hereto or otherwise existing between Debtor and any commercial lessor other than the BRU License described above.  Any bid on such commercial lease shall be made with the express acknowledgment that purchaser is responsible for any necessary cure payments as required by Section 365 of the Bankruptcy Code.

(d)  All inventory (frames, mats, paper, chemicals etc.) at corporate, lab and BRU locations;

(e)  Lab equipment, including but not limited to two Ranopak machines, one enlargement sealer, and one 40 inch enlargement laminator;

(f)  All assets including cameras and props located at the corporate and lab locations;

(g)  All assets, including but not limited to computers, software, viewing stations, props, cameras, leaseholds, furniture and fixtures and printers located at all BRU locations;

(h)  All assets, including but not limited to computers, software, viewing stations, cameras, leaseholds, furniture and fixtures and printers located at all other leased locations

(i)  All spare parts for cameras and printers located at all locations;

(j)  Customer lists subject to the conditions set forth in Paragraph 11 below;

(k)  Employee listing with names, addresses, phone numbers;

(l)  Vendor listing with contact information;

(m)  All images currently stored on any and all devices subject to the conditions set forth in Paragraph 11 below;

(n)  Source code libraries for all IT applications;

(o)  Field technicians hardware inventory to support BRU and other leased locations;

(p)  All advertising and marketing materials; and

(q)    All rights in and to the "Kiddie Kandids" name and other tradenames, trademarks, service marks, or trade address owned by Kiddie Kandids.

(r)    All Real Property owned by the Debtor consisting of property located in Sandy, Utah subject to the 90 day lease described in paragraph A above.

11.    <u>Conditions on Sale, Sale As Is, Where Is, Minimum Bid</u>. The Property is being auctioned as is, where is, and with no warranties or guarantees of any kind. The Trustee, as set forth in the Sale Notice intends to initially auction the Property set forth in 10(a) through 10(q) above in one lot. The Real Property will be auctioned, subject to the Trustee's discretion, separately from the Property. Any potential bidder may exclude any particular item of Property and associated rights set forth above as the Property to be auctioned, however, such bid will still be compared to other bids which include, potentially, more or all of the Property subject to auction. The Trustee may also choose to auction the Property in smaller lots as set forth in the Sale Notice. Nevertheless, the Trustee shall impose the following conditions on purchasers bidding at the auction by court order. First, any potential bidder/purchaser acquiring the customer lists and the images stored electronically or in hard copies at the various locations shall obtain those assets 1) subject to the Debtor's existing privacy statement and with an obligation to continue to honor the commitment made by the Debtor and 2) subject to the agreement by such purchaser to, in good faith, deliver all existing photos paid for and deliverable to customers or which may be paid for and delivered to customers. Second, as a general condition, the auction of the Property will be subject to a minimum bid of $1,000,000 whether it is sold in one lot or in separate lots. Third, as a condition to bidding on any of the Leased Locations and leases associated therewith (but not the Property located therein), any bidder shall identify to the

Trustee by March 12, 2010 the specific Leased Locations for which they will make a bid.  If such

a designation is made, the party designating such leases must also submit to the Trustee also on

March 12, 2010, certified funds in the amount of $50,000 representing the earnest money deposit

described in the Sale Notice served herewith.  Any failure to timely identify a Leased Location

which may be the subject of a bid or to pay the earnest money deposit may cause the Trustee to

seek the immediate rejection of the lease associated for such Leased Location such that the

rejection will be effective prior to the auction set for March 19, 2010.

   12. <u>Prior Marketing of the Property and Real Property</u>.  The Trustee has conducted

only limited marketing of the Property.  The Trustee is aware of the efforts made by the Debtor

and the Debtor's investment banker to find potential purchasers of the Property when the

Property was part of the ongoing business.  The Trustee believes that these efforts have identified

the parties which may be potential bidders at the auction sought hereunder and the Trustee

proposes to send the Sale Notice to those entities as well as any additional entity identified by the

Trustee.  The Trustee will also advertise the sale on one or more business-sale oriented websites.

Also, the Trustee will continue, of course, to be responsive to any new party which may

approach the Trustee with an interest in bidding at the auction.  With respect to the Real

Property, the Trustee may withhold such Real Property from auction if no bidder interested in

biding on the Property is also interested in the Real Property.  The Trustee reserves the right to

set a minimum bid for the Real Property.

   13. <u>Liens or Interests Against the Property</u>.  The Trustee believes that all of the

Property to be auctioned is subject to a blanket lien of certain syndicated lenders (individually

and collectively the "Lenders") of which CapitalSource Finance LLC acts as administrative and

collateral agent (the "Agent"). The Trustee does not currently know of any encumbrance in the

Real Property. The Trustee has explained this proposed process to the Lenders' Agent and

believes that the Agent and Lenders have consented and will consent, subject to the minimum

bid set forth above and approval of the Stipulation and Settlement Agreement defined herein, to

the sale pursuant to auction as required by Section 363 of the Bankruptcy Code. The Agent, on

behalf of itself and the Lenders, retains however, the right to credit bid at the auction. The

Trustee will file or has filed a separate settlement/cash collateral motion agreed to in principle

between Agent, on behalf of itself and the Lenders, and the Trustee ("Stipulation and Settlement

Agreement") setting forth the rights of the Agent, on behalf of itself and the Lenders, and the

rights of the estate with respect to any proceeds obtained through this auction/sale process of the

Lender's collateral. The Trustee has moved for the sale of the Property free and clear of any

such liens and interests and that such liens and interests attach to the proceeds of sale (with the

same validity and priority, if any, they had on the petition date in this case), pursuant to section

363(f) subject only to the Stipulation and Settlement Agreement.

      14.      Advertising of Auction Sale of the Property. This Motion and the Sale Notice

have been served upon the Debtor, creditors, the United States Trustee and other parties in

interest in this case. The Trustee proposes to advertise the auction sale by sending the Sale

Notice to the identified purchasers as well as any other party indicating an interest in bidding at

the auction and advertising on sale of business oriented websites.

      15.      Marketing and Auction Agent Commission. The Trustee will conduct the auction

himself and will not retain any Marketing or Sales agent. The Trustee is entitled to trustee

commissions on distributions of the proceeds of sale, subject to approval of the Court and the provisions of 11 U.S.C. § 326.

16.     Proposed Auction Procedures with Respect to the Property and Real Property. The Trustee has set forth proposed procedures for the sale in the Sale Notice filed herewith and incorporated herein and respectfully requests that, at the hearing on this Motion, the procedures be approved.

17.     Summary of Proposed Auction Procedures with Respect to the Property and Real Property. The auction of the Property will be conducted by the Trustee at his offices on March 19, 2010, after Court approval of this Motion.

18.     Advertising of Auction Sale of the Property and Real Property. As set forth in paragraph 15 above, the Trustee's marketing efforts shall be limited to sending the Sale Notice to identified potential purchasers and by responding to any additional party that may show an interest in bidding at the auction. The Trustee shall also post the notice of sale on at least one internet business sale site.

19.     Terms and Conditions of Auction Sale; Due Diligence. The Property and Real Property are being auctioned as is, where is, and with no warranties or guarantees of any kind and subject to the other terms and conditions set forth in paragraph 11 above. As stated in the sale notice, there shall be no due diligence period afforded after the auction and approval of the auction at the final hearing. Thus, the parties must complete all due diligence before the auction. The Trustee specifically authorizes any potential bidder the right to negotiate with any party whose lease or contract is subject to assumption and assignment provided however that such party may not complete any deal that would prevent the Trustee from effectuating the

assumption and assignment of such lease, contract or license.  The Trustee also does not oppose

potential bidders dealing with former employees, contracting parties with Kiddie Kandids or

other third-parties otherwise related to the Debtor as such potential bidder may deem appropriate

in formulating a bid.

20.    <u>Commissions on the Sale of the Property and Real Property</u>.  The Trustee is

entitled to trustee commissions on distributions of the proceeds of sale, subject to approval of the

Court and the provisions of 11 U.S.C. § 326.

## PROVISIONS APPLICABLE TO SALE AND AUCTION OF PROPERTY AND REAL PROPERTY

21.    <u>Proposed Disposition of Sale Proceeds</u>.  The Trustee intends to deposit the

proceeds from the auction into his Trust account and distribute them pursuant to either 1) the

Stipulation and Settlement Agreement or 2) pursuant to further order of the Court if such

Stipulation is not approved by the time of the closing of any sale obtained through the auction

process.

22.    <u>Applicable Law on Sale</u>.  Bankruptcy Code Section 363(f) permits the Trustee to

sell the estate's interest in the Property free and clear of interests, with liens to attach to the

proceeds with the same validity and priority, if any, they had on the petition date.  Section 363(f)

provides:

> The trustee may sell property under subsection (b) or (c) of this section
> free and clear of any interest in such property of an entity other than the estate,
> only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and
> clear of such interest;
>
> (2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  The Trustee believes that he has obtained the consent of the Lender with respect to the proposed auction.

23.    Requested Findings and Conclusions.  The Trustee will present evidence at the hearing on this Motion and/or at the hearing to confirm the sale of the Property (or similar provisions with respect to the sale of the Real Property to the extent it may be sold at auction)  to a prevailing bidder at auction to support the following findings and conclusions, which the Trustee will request that the Court include in an order approving the sale, along with any other appropriate findings and conclusions, including provisions for payments to secured creditors whose claims can be validated:

(a)    The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334.

(b)    This motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O).

(c)    Good and sufficient notice of the motion and the relief sought herein has been given and no other or further notice is required.  A reasonable opportunity to object to be heard regarding the relief requested in this motion has been afforded to parties in interest.

(d)    All objections, if any, to the sale, have been resolved, overruled, or withdrawn.

(e)    The Trustee has demonstrated good, sufficient, and sound business purposes for the sale of the Property as required by Section 363(b) of the Bankruptcy Code.

(f)    The prevailing bidder at the auction of the Property has acted in good faith and not engaged in conduct that would prevent the application of Section 363(m) of the Bankruptcy Code, and is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby.

(g)    Effective as of the closing of the sale of the Property as approved by the Court, the transfer of the Property to the purchaser or will (i) be a legal, valid, and effective transfer of property of the estate to the purchaser; and (ii) vest the purchaser with all right, title, and interest of the Debtor and the estate in and to the Property purchased free and clear of interests (including liens, taxes, claims, charges or encumbrances) pursuant to Section 363(f) of the Bankruptcy Code.

(h)    The estate has good, valid, and marketable title to all of the Property.

(i)    The Property is sold pursuant to the terms and conditions set forth in Section 11 above including the consumer privacy protection and the as is, where is provision.

24.    <u>Proposed Operative Provisions of Order.</u>  Based upon the foregoing findings, the Trustee will request that the Court's Order include the following operative provisions, along with any others which may be appropriate, including the following:

(a)    The Motion is granted in all respects.

(b)    All objections to the Motion or the relief requested herein that have not

been withdrawn, waived, or settled, including all reservations of rights included therein

which are not otherwise provided for by the order are overruled on the merits.

(c)    The sale of the Property to a purchaser pursuant to terms of this Motion,

the Sale Notice, and the Order approving this Motion, is authorized under sections 363(b)

and (f) of the Bankruptcy Code.

(d)    The Trustee is authorized and directed to execute and deliver, and

empowered fully to perform under, consummate, and implement, the sales contemplated

by this Motion, together with all additional instruments and documents that may be

reasonably necessary or desirable to implement the sales, and to take all further actions as

may be reasonably requested by the purchasers.  The purchaser is ordered to perform in

accordance with the terms of the sale embodied in this Order.

(e)    Upon closing, the Property shall be transferred to the respective purchaser

free and clear of all interests (including liens, taxes, claims, charges or encumbrances), as

defined in Section 101 of the Bankruptcy Code (the "Interests"), pursuant to Section

363(f) of the Bankruptcy Code, with all such liens and interests released, terminated and

discharged as to the Property and all such liens and interests entitled to be asserted only

against the proceeds of sale to the same validity, extent and priority, if any, they had on

the Petition Date.

(f)    The transfer of the Property to its purchaser shall constitute a legal, valid,

and effective transfer of the Property and shall vest the purchaser with all right, title, and

interest of the Debtor and the Debtor's bankruptcy estate in and to the Property free and

clear of all liens and interests except for obligations under the Order with all liens to attach to the proceeds as set forth in Section 363 of the Bankruptcy Code to the same validity, extent and priority, if any, they had on the Petition Date.

(g)   The transaction contemplated by the sales and sale procedures is undertaken by the Trustee and the respective purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in the Order to consummate the sale shall not affect the validity of the sale to a purchaser, unless such authorization is stayed pending appeal. The purchaser is a good faith purchaser.

(h)   The consideration provided by the purchaser for the Property pursuant to the sale procedures set forth herein shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any State, territory, or possession thereof.

(i)   All entities that are presently, or at any time hereafter prior to closing with a purchaser, may be, in possession of some or all of the Property, including Landlords of rejected leases, are hereby directed to surrender possession of the respective property to the purchaser upon closing and this order is sufficient proof of such right. The purchaser has the rights of the Trustee to enforce this provision.

(j)   The purchaser is not a successor to the Debtor or to the Debtor's bankruptcy estate by reason of any theory of law or equity.

(k)   The Order: (i) is and shall be effective as a determination that, as of the closing, all liens and interests existing as to the Property prior to the closing have been

and hereby are unconditionally released, discharged and terminated as to the relevant

property, and that the conveyance described in the Order has been effected; (ii) is and

shall be effective to cause all liens and interests to attach to and be perfected in the

proceeds of the sale of the Property with the same validity, extent and priority, if any,

they had on the Petition Date.

      (l)     The Court retains exclusive jurisdiction to:  (i) enforce and implement the

terms and provisions of the Order approving this Motion and all amendments thereto,

(ii) resolve any disputes arising under or related to the sales contemplated hereby; and

(iii) interpret, implement, and enforce the provisions of the Order.

      (m)    The terms and provisions of the Order shall be binding in all respects

upon, and inure to the benefit of the Trustee, the Debtor's bankruptcy estate, any of its

affiliates, successors, and assign, its creditors and third parties, including but not limited

to persons asserting an interest against or interest in the Debtor's bankruptcy estate or any

of the Property and Real Property.

      (n)     Notwithstanding Bankruptcy Rule 6004(g), the order shall be effective and

enforceable immediately upon entry and shall be self-executing.

## MOTION TO ALLOW ASSUMPTION OR REJECTION OF LEASES; ASSUMPTION OR REJECTION OF BRU CONTRACT IN ACCORDANCE WITH AUCTION RESULTS

      25.    <u>Leases to Be Assumed or Rejected</u>.  As set forth above, the Debtor conducted his

business at various leased locations which, other than the BRU License locations, consist mainly

of retail outlets at various malls located throughout the country.  Those locations include the

locations set forth in Exhibit A hereto (the "Leased Locations," specifically excluding any

location covered by the BRU License).   All of the Leased Locations are closed (as is Debtor's entire business) but Debtor retains significant property in each location.

26.      As part of this sale process, the Trustee is offering potential bidders the right to have any of these locations assumed and assigned to them with the proviso that such potential purchaser fund the necessary costs to make any cure payments required by Section 365 of the Bankruptcy Code.  The Trustee is unsure whether any party will make a bid with respect to such locations or if they have any positive value for the estate.

27.      The Leased Locations, if they cannot be assigned to a purchaser, represent a negative value to this estate to the extent there may be accruing costs in connection with each Leased Location where the lease has not been rejected.  Thus pursuant to the Bankruptcy Code standard, these Leased Locations are burdensome and of inconsequential value to the estate.

28.      The Trustee has determined pursuant to his sound business judgment, that all of the Leased Locations which will not be bid upon or part of the Property to be purchased in connection with this Motion should be immediately abandoned and all personal property located at each location (to the extent not purchased as part of this bidding process) abandoned for the benefit of any secured creditor in such personal property.

29.      As part of this Motion, the Trustee proposes the following procedure to effectuate the assumption or rejection of the leases associated with the Leased Locations:

(a)      First, the Trustee requests that the Court allow the rejection of all of the leases associated with the Leased Locations subject only to the process for potentially assuming all or some of such leases as follows.

(b)      The Trustee has required, as a condition to bidding and the sale, that any proposed bidder with respect to a Leased Location identify their interest in assuming the lease associated with such location by March 12, 2010.  The deadline for the automatic rejection in of leases in this case pursuant to the Bankruptcy Code is March 13, 2010 which is the 60th day of this case.

(c)      Failing such identification, the Trustee shall submit on or before March 15, 2010 (the subsequent business day after the 60th day) an order consummating the rejection of all leases which the prospective bidders have not identified as a lease for a Leased Location as to which they shall seek an assumption and assignment pursuant to the auction process.  The Trustee requests that such rejection be made effective as of the Petition Date in accordance with Section 365 of the Bankruptcy Code with any claim for rejection damages filed within either the time prescribed by Section 502 of the Code or the normal claim deadline in this case, whichever is longer.

(d)      With respect to the leases which are not embodied in such rejection order described above, the Trustee withdraws his request for rejection and instead the Trustee requests that the date to assume or reject those leases be extended until March 30, 2010.  If such Leased Locations as to which the Trustee has a) not filed an order for rejection and b) obtained an extension are not part of the winning bid at the auction set for March 19, 2010, the Trustee shall submit a second order on March 20, 2010 seeking the rejection of such leases.

(e)      To the extent the leases associated with any leased location is part of the winning bid, the Trustee shall seek the assumption and assignment of such leases on the final

hearing and shall provide, in cooperation with the winning bidder, cure of past defaults and

assurance of future performance as well as all proving all other requirements set forth under

Section 365 of the Bankruptcy Code.

      (f)     By March 30, 2010, all of the leases at the Leased Locations, through the

process set forth above, will either have been rejected or assumed and assigned pursuant to the

Bankruptcy Code.

     30.     With respect to the proposed extension on leases not rejected by March 15, 2010,

the Trustee, the Trustee believes that the extension is both beneficial to the estate and potentially

beneficial to the landlord since there is a possibility that such lease will be assumed and assigned

in the sale process.  Furthermore, the extension sought by the Trustee is short with potentially

rejection, to the extent such lease is not assumed or assigned, being effectuated by March 19,

2010.  Accordingly, the Trustee believes that the benefit of such extension out weighs any

prejudice.

     31.     <u>Assumption or Rejection of BRU License</u>.  As described in paragraph 10.b above,

the Trustee will auction rights associated with the BRU License.  Depending on the options of

the winning bidder, the BRU License may either be assumed and assigned, modified (with

agreement by winning bidder and BRU) or rejected.  Thus, the Trustee will ask the Court to

approve, at the final hearing scheduled in connection herewith, either the assumption and

assignment, consensual modification or rejection of the BRU License in accordance with the

results of the auction.  Upon the conclusion of the auction, the Trustee will given BRU notice of

the specific intent of the winning bidder and whether the Trustee will seek assumption or

rejection of the BRU License at the final hearing.

32.     Also, to the extent necessary, the Trustee requests that the Court extend the time

for assumption or rejection of the leases associated with the Leased Locations, and to the extent

it might constitute a real property lease, the BRU License, until March 30, 2010 as provided for

under section 365(d)(1) of the Bankruptcy Code and to consider this request at the initial hearing

to be held on March 9, 2010 as set forth in the Sale Notice.

33.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession,

"subject to the court's approval, may...reject any executory contract or unexpired lease of the

debtor." 11 U.S.C. § 365(a). *See also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*,

973 F.2d 1065, 1075 (3d Cir. 1992). The principal purpose of section 365(a) is to allow a debtor

in possession or trustee "to relieve the bankruptcy estate of burdensome agreements which have

not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.,*

*83 F.3d 735, 741 (5th Cir. 1996) (citing Phoenix Exploration, Inc. v. Yaquinto (In re Muerexco*

*Petroleum, Inc.)*, 15 F.3d 60, 62 (5th Cir. 1994)). Rejection of an executory contract or unexpired

lease is appropriate where rejection of the contract or lease would benefit the estate. *See Sharon*

*Steel Corp. v. Nat'l Fuel Gas Ditrib. Corp. (In re. Sharon Steel Corp.)*, 872 F.2d 36, 39-40

(3d Cir. 1989).

34.     The decision to assume or reject an executory contract or unexpired lease is a

matter within the "business judgment" of the debtor. *See NLRB v. Bildisco & Bildisco (In re*

*Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is

simply whether rejection would benefit the estate, the 'business judgment' test. *"); see also In re*

*Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Banks. D. Del. 2003). The business judgment standard mandates. that a court approve a debtor's business decision unless the decision is the product of bad faith, whim or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001). *See also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). Accordingly, if a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., Federal Mogul*, 293 B.R. at 126.

35. The Trustee asserts that his business judgment has been appropriately exercised with respect to the rejection or assumption of the leases associated with the Leased Locations.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully requests that this Court enter an Order: (1) ordering a report to be filed by the privacy ombudsman not later than 5 days prior to the final hearing set forth herein and determining that the sale of the Property is consistent with the confidentiality policy of the Debtor with respect to personally identifiable information (2) authorizing the auction and sale of the Property as set forth herein, free and clear of interests as provided in Bankruptcy Code section 363(f) with valid liens and/or interests to attach to the sale proceeds (with the same validity and priority, if any, they had on the Petition Date in this case); (3) approving the sale procedures set forth herein;  (4) after conclusion of the auction of the Property, approval and confirmation of the sale to the winning bidder and including the terms proposed herein; (5) approving distribution of sale/auction proceeds set forth in the Sale Notice

and incorporated herein by this reference or as set forth in the Stipulation and Settlement

Agreement or any other agreement approved by the Court between the Trustee and Agent, on

behalf of itself and Lenders; (6) approving the rejection of leases associated with the Leased

Locations unless the Trustee specifically moves for assumption of any such lease with such

assumption to be heard at the hearing on March 30, 2010, approving the assumption or rejection

of the BRU License, (7) extending time as necessary to seek the rejection/assumption of leases

associated with the Leased Locations and BRU License, if necessary, until March 30, 2010, (8)

allowing, at the hearing to be held on March 30, 2010, the abandonment of property held at the

Leased Locations if such property is not purchased at the auction and (9) such further and

additional relief as the Court deems appropriate.

      DATED this 12th day of February, 2010.

                        DURHAM JONES & PINEGAR, P.C.

                        By: / s / Penrod W. Keith
                           Duane H. Gillman
                           Penrod W. Keith
                           111 East Broadway, Suite 900
                           P O Box 4050
                           Salt Lake City, UT  84110-4050
                           Tel.:  801-415-3000
                           Fax:  801-415-3500
                           dgillman@djplaw.com
                           pkeith@djplaw.com

                        Proposed Attorneys for Duane H. Gillman,
                        Chapter 7 Trustee

# EXHIBIT A

# Kiddie Kandids
## Commercial Mall Leases

A&O Gaspare Trust
Attn: Angelo Gaspare, Trustee
445 Marine View Avenue, Suite 270
Del Mar, CA 92014

Antelope Valley Mall Developers, Ltd.
c/o Terminal Tower
50 Public Square, Suite 1360
Cleveland, OH 44113-2267

Apache Mall
c/o Rochester Mall, LLC
110 North Wacker Drive
Chicago, IL 60606

BABB Investments, LLC
9735 South 500 West
Sandy, UT 84070

Battlefield Mall, LLC
c/o M.S. Management Associates, Inc.
225 West Washington Street
Indianapolis, IN 46204

Bayshore Town Center, LLC
c/o Steiner Properties, LLC
4200 Regent Street, Suite 210
Columbus, OH 43219

Boise Mall, LLC
350 North Milwaukee
Boise, ID 83704

BPC Henderson, LLC
c/o Terminal Tower
50 Public Square, Suite 1360
Cleveland, OH 44113-2267

Chapel Hills Mall, LLC
110 North Wacker Drive
Chicago, IL 60606

Colorado Mills, LP
c/o The Mills Corporation
1300 Wilson Boulevard, Suite 400
Arlingon, VA 22209

Coventry III/Satterfield Helm
Valley Fair, LLC
3601 South 2700 West, Suite G128
West Valley City, UT 84119

Davis Street Land Company of New
Mexico,
630 Davis Street, Suite 200
Evanston, IL 60201

DVM, Co.
9617 Metro Parkway West
Phoenix, AZ 85051

East Mesa Mall Associates, LLC
6555 East Southern Avenue
Mesa, AZ 85206

Eastridge Shopping Center, LLC
110 North Wacker Drive
Chicago, IL 60606

Flatiron Holding, LLC
1 West Flatiron Circle, Suite 1083
Broomfield, CO 80021

Florida Mall Associates, Ltd.
c/o M.S. Management Associates, Inc.
115 West Washington Street
Indianapolis, IN 46204-3438

Grapevine Mills, LP
c/o M.S. Management Associates, Inc.
225 West Washington Street
Indianapolis, IN 46204-3438

SLC_550979.1

# Commercial Mall Leases

Imperial Valley Mall, LP
c/o CBL & Associates Management, Inc.
2030 Hamilton Place Boulevard
Chattanooga, TN 37421-6000

Jordan Landry, LLC
c/o Russell W. Grosse Development Co Inc
5850 Avenida Encinas, Suite A
Carlsbad, CA 92008

Layton Hills Mall CMBS, LLC
c/o CBL & Associates Management, Inc.
2030 Hamilton Place Boulevard
Chattanooga, TN 37421-6000

Macerich Rimrock, LP
30 South 24th Street West
Billings, MT 59102

Macerich South Towne, LP
c/o Management Office
10450 South State Street
CBL Center, Suite 500
Sandy, UT 84070

Macerich Stonewood, LLC
c/o Management Office
251 Stonewood Street
Downey, CA 90241

Magic Valley Partners, LP
124 Johnson Ferry Road, NE
Atlanta, GA 30328

Mall at White Oaks, LLC
c/o M.S. Management Associates, Inc.
225 West Washington Street
Indianapolis, IN 46204-3438

Neshaminy Mall Joint Venture, LP
110 North Wacker Drive
Chicago, IL 60606

New River Associates
7700 West Arrowhead Towne Center
Glendale, AZ 85308

Newgate Mall, LLC
c/o GGP/Homart, Inc.
110 North Wacker Drive
Chicago, IL 60606

Price Development Company, LP
110 North Wacker Drive
Chicago, IL 60606

Provo Mall, LLC
110 North Wacker Drive
Chicago, IL 60606

Rouse-Fashion Place, LLC
c/o The Rouse Company
10275 Little Patuxent Parkway
Columbia, MD 21044

Simon Capital, GP
c/o M.S. Management Associates, Inc.
115 West Washington Street
Indianapolis, IN 46204

SIP Victor Valley, LLC
c/o Somera Investment Partners
6701 Center West Drive, Suite 1450
Los Angeles, CA 90045

Southwest Plaza, LLC
110 North Wacker Drive
Chicago, IL 60606

Spokane Mall, LLC
110 North Wacker Drive
Chicago, IL 60606

St. Louis Mills, LP
c/o The Mills Corporation
1300 Wilson Boulevard, Suite 400
Arlington, VA 22209

# Kiddie Kandids
## Commercial Mall Leases

Stonebriar Mall, LLC
110 North Wacker Drive
Chicago, IL 60606

T.W.C. Chandler, LLC
3111 West Chandler Blvd., Suite 214
Chandler, AZ 85226

Tanforan Park Shopping Center, LLC
3600 Birch Street, Suite 250
Newport Beach, CA 92660

Taubman Western Associates No. 2, LLC
200 East Long Lake Road
Bloomfield Hills, MI 48303-0200

The Connecticut Post, LP
11601 Wilshire Blvd., 11th Floor
Los Angeles, CA 90025

The Highland Mall Joint Venture
c/o The Rouse Company
10275 Little Patuxent Parkway
Columbia, MD 21044

The Irvine Company
100 Innovation Drive
Irvine, CA 92618

The Mall in Columbia Business Trust
110 North Wacker Drive
Chicago, IL 60606

University Mall Shopping Center, GP
575 E. University Parkway, Suite 205
Orem, UT 84097

WEA Southlake, LLC
11601 Wilshire Blvd., 11th Floor
Los Angeles, CA 90025

WEA Southpark, LLC
11601 Wilshire Blvd., 11th Floor
Los Angeles, CA 90025

Westday Associates, LP
4568 East Cactus Road
Phoenix, AZ 85032

Woodbridge Center Property, LLC
1110 North Wacker Drive
Chicago, IL 60606

Woodfield Mall, LLC
200 East Long Lake Road
Bloomfield Hills, MI 48303-0200